UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA

In re:

HOLIDAY ISLE, LLC,                                              Case No.: 08-14135

    Debtor.

## ORDER DECLARING THAT HOLIDAY ISLE, LLC IS A SINGLE ASSET REAL ESTATE DEBTOR

Irvin Grodsky, representing the Debtor, Holiday Isle, LLC
Lawrence B. Voit, Alexander Gray, Jr., and Robert E. Clute, representing RBC Real Estate Finance, Inc.
Donald Stewart, representing The Mitchell Company, Inc.
Richard Maples, Jr., representing Charles and Donna Steinau
Carson I. Nicolson, representing Catherine McAleer, Patricia Burke, Joseph Guy, Marcelline Holiday, Michael and Joan Lynch, Richard Murray, III, Jay and Lisa Murray, John and Tracy Gardner, Arthur Fitzner, and Celeste Taylor.
Travis Bedsole, Bankruptcy Administrator

    This matter is before the Court on the Motion of RBC Real Estate Finance, Inc. For Determination That Debtor is the Owner of "Single Asset Real Estate". The Court has jurisdiction to hear this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Order of Reference of the District Court. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I), and the Court has authority to enter a final order. For the reasons indicated below, the Court finds that the Debtor is a Single Asset Real Estate debtor as that term is defined in 11 U.S.C. § 101(51B).

**FACTS**

    The Debtor, Holiday Isle, LLC., filed its Chapter 11 case on October 23, 2008. Holiday Isle is an Alabama limited liability company formed to construct a condominium structure. Holiday Isle

1

is managed by The Mitchell Company, Inc.[1] Holiday Isle created a single condominium structure with 144 residential units, one commercial unit, two pools, parking, and other common areas.

Holiday Isle financed the building of the condominiums through a construction loan in the amount of $49,850,000.00 from AmSouth Bank. The Bank has full recourse against Holiday Isle itself, and full recourse as to part of the loan against The Mitchell Company, Inc., and JDC Acquisition (the parent company of The Mitchell Company, Inc.), and limited recourse against three individual shareholders of JDC Acquisition Corporation. Although Amsouth Bank originated the loan, RBC Real Estate Finance, Inc. ("RBC") now holds the loan after a series of bank mergers and asset transfers.

Prior to filing bankruptcy, debtor sold 58 of the 144 condo units. At the closing of each unit, RBC received some or all of the proceeds and released the sold unit from the construction lien. The sales have reduced the balance owed to RBC to approximately $19,125.000. Debtor asserts that the value of the 86 unsold residential units is approximately $32,650,000. If true, RBC is oversecured.

Holiday Isle's primary business is selling the 86 condominium units. It derives its income strictly from the sale of the units, with the exception of a $500 per month rental payment for the commercial unit. Debtor currently has three employees, a project coordinator, a marketing director, and a salesperson who take care of the day-to-day maintenance and marketing of the company's inventory of condo units. Marketing includes advertising as well as meeting with brokers and potential buyers.

---

[1] The Mitchell Company and Holiday Isle file consolidated tax returns. Three employees of The Mitchell Company are assigned to conduct the business of Holiday Isle. These three employees make up the staff of Holiday Isle. Their salaries and benefits are charged to Holiday Isle.

RBC filed a Motion For Determination That Debtor Is The Owner Of "Single Asset Real Estate."  The Debtor objected to this motion.  A hearing was held on December 2, 2008, and the matter was taken under advisement.

**LAW**

The Bankruptcy Code defines "single asset real estate" ("SARE") as

> real property constituting a single property or project, other than residential real property with fewer than 4 residential units, which generates substantially all of the gross income of a debtor who is not a family farmer and on which no substantial business is being conducted by a debtor other than the business of operating the real property and activities incidental.

11 U.S.C. § 101(51B).

There are three elements which must be met for a debtor to fall within the definition and be declared a SARE: (1) it must own real property, with more than four units, that constitutes a single property or project; (2) the property must generate most all of the debtor's income; and (3) almost all of the debtor's income must be generated from the operation of the real property or activities incidental thereto.  If any one of the elements is not present, then the debtor is not a SARE under the Bankruptcy Code.

RBC asserts that Holiday Isle is a SARE because of the advantages RBC believes it would have if that designation applies.  The debtor must, by January 21, 2009, either propose a plan of reorganization that has a "reasonable possibility of being confirmed within a reasonable time" or commence paying RBC monthly the amount of nondefault contractual interest due on the loan.  11 U.S.C. § 362(d)(3).  If Holiday Isle does not do one or the other, the automatic stay must be terminated by the court.

The court will consider each element of the definition of a SARE in turn.  To the extent the

3

definition is unclear, the Court will review and apply the legislative history of Section 101(51B) of the Bankruptcy Code.

The burden of proving that Holiday Isle is a SARE is on RBC as movant. It must prove its case by a preponderance of the evidence.

**A.**

**Does the debtor own real property that constitutes a single property?**

It is clear that Holiday Isle was formed to create a condominium structure. The structure was to contain 144 residential units, a commercial unit, two pools, parking facilities, and other common areas. At the time of design and construction, when the project was raw land, Holiday Isle would clearly have been viewed as a single asset real estate debtor. However, to determine whether or not Holiday Isle is a SARE today, the court must look at what the debtor's ownership interest in the real property was at the time it filed its petition. The issue is whether the 86 units, being less than the whole property, can constitute "a single property or project." The court concludes they do not constitute "a single property" but are a "single project."

At the time of filing, the debtor had completed its project and sold 58 residential condominium units. RBC, or its predecessor, received payment on its loan after each closing, and the purchaser became the outright owner of the purchased unit and obtained an undivided interest in all common areas of the condominium structure. At the time of the bankruptcy filing, fifty-eight units were owned by individuals other than the debtor; fifty-eight individuals and/or families also own undivided interests in all common areas of Holiday Isle Condominium, and the Condominium Owners Association was in operation.

These facts leave the debtor owning 86 residential units, a commercial unit, and an undivided

4

interest in the common areas equal to its percentage interest remaining in the property. The debtor, however, no longer owns the condominium structure. This conclusion is supported by the testimony of the vice-president of The Mitchell Company, Inc. and Alabama law (ALA CODE § 35-8A-105) which declares condo units are separate parcels of real estate and must be assessed and taxed individually (as the debtor did in 2007 and 2008). Therefore, the 86 individual units are separate pieces of real estate and cannot be viewed as a single property.

**B.**

**Does the debtor own real property that constitutes a single project?**

Even if the 86 units do not constitute a single property, are they "a single project"? If so, the first prong of the SARE test is met. At the time Holiday Isle was created and construction began, the debtor was engaged in a single project - designing and building a condominium structure with an intent to sell the condominium units once the project was completed. The question again arises, whether the 86 units, being less than the whole property, can constitute "a single project."

RBC asserts that the debtor is still engaged in a single project--that although the construction is complete, the debtor is continuing to carrying out its initial plan to sell the built condominium project units. RBC claims that this was the goal of the project from its inception and any other work the debtor is currently contributing (marketing, sales) is only incidental to selling the remaining condominium units.

The debtor, however, contends that these units are not a single project because they do not share a common plan or scheme involving their use as required by *Philmont Development Co.*, 181 B.R. 220 (Bankr. E.D. Pa. 1995). "The mere fact of common ownership, or even a common border,

5

will not suffice." *In re McGreals*, 201 B.R. 736, 742-43 (Bankr. E.D. Pa. 1996). The debtor states that the units are analogous to inventory - like cars parked on a lot to be sold. Those vehicles are separate pieces of property, all grouped together at one location for sale, but they lack a common plan for their usage. It is up to the buyer of the vehicle to determine how he or she wants to utilize the purchased automobile. However, rental cars on a rental lot would share a common plan for their usage. The debtor correlates the distinction in the vehicles for sale versus rent to its intention to sell the residential units and not to rent or lease them. If the debtor is correct that the condominium units lack a common plan for their usage, then the debtor would not own real property that constitutes a single project.

Courts have examined the issue of what constitutes a single project numerous times. In *Philmont Development*, the debtor corporation was a general partner in three limited partnerships. The corporation purchased land and built a series of semi-detached homes. The corporation then sold groups of these homes to the three limited partnerships. The limited partnerships operated and managed these real properties, and the rent from the properties was each partnership's source of income. The corporation and the limited partnerships filed bankruptcy petitions, and the court was asked to determine whether or not the debtors were SAREs. The court concluded that the corporation was not a SARE because its assets were its interests in the limited partnerships and other real property. However, the court determined that the three limited partnerships were single asset real estate debtors according to the Code because, although the semi-detached houses were separate pieces of property (each having its own address and tax assessment), each constituted a "single project." The debtor would manage the property and receive its income from renting the real estate. *In re Philmont Dev. Co.*, 181 B.R. 220, 223-24 (Bankr. E.D. Pa. 1995).

6

In *Webb*, the debtor purchased five parcels of land and intended to construct a resort on its property. The debtor planned to build two golf courses, a luxury hotel, a convention center, a retail center, condominiums, and single-family homes. *In re Webb Mountain, LLC,* 2008 WL 656271, *4 (Bankr. E.D. Tenn. 2008). Had the resort been built, the debtor would have had active income production from many sources and the property would have been utilized in multiple ways. *Id.* However, the court concluded the five parcels were one project, a resort. The intention of the debtor to develop many different businesses on the property did not take away from the common scheme of the resort development. *Id.* at *5. In making its determination that the debtor was a SARE, the court focused on the fact that at the time the debtor filed its case, the land was still undeveloped, it was not producing any income, and the debtor was conducting no business on the land besides "merely operating the real property and activities incidental thereto." *Id.* at *6.

The court in *McGreals* concluded the debtor was not a single asset real estate debtor because it did not have a common plan for the use of its owned real estate in order to characterize the real estate as a single project. The debtor was a partnership that owned two parcels of partially adjacent land. The parcels shared a common boundary but had separate parcel numbers and were taxed separately. When the debtor acquired these two parcels, it intended to lease one (which already had a refrigerated building on it) to a meat packing company, which it did, and it intended to build a warehouse condominium on the other parcel in the future. The warehouse was never built. The court determined the separate properties were not a single project because they were not "linked together in some fashion in a common plan or scheme involving their use." *In re McGreals*, 201 B.R. 736, 743 (Bankr. E.D. Pa. 1996).

The court concludes that Holiday Isle does constitute a single project. Section 362(d)(3) does

7

not focus on the end users use of the property. It focuses only on the property from the debtor's perspective. Although the debtor no longer owns all of the units, the remaining units are one project. Its remaining purpose is to sell all of the units it holds. The units are all to be sold as part of a single plan and scheme.

## C.

### Does the property generate all of the debtor's income?

The property does generate all of the debtor's income. Either sales of units or rental of the commercial unit are the only way the property obtains funds.

## D.

### Does the debtor conduct substantial business on the property other than the business of "operating the real property and activities incidental"?

The issue raised by this prong of the SARE test requires that the court determine what the phrase "operating the real estate and activities incidental" means. On the face of it, the phrase is ambiguous. "Operating the real estate" could mean keeping it in good repair, paying its debts and/or collecting rents or sales proceeds. When does activity associated with the real estate cross the line between "operating" the property and conducting substantial business? Since the phrase is ambiguous, the court will look at the legislative history of the phrase "single asset real estate" and other case law.

> When the import of the words Congress has used is clear . . . we need not resort to legislative history, and we certainly should not do so to undermine the plain meaning of the statutory language. Even if a statute's legislative history evinces an intent contrary to its straightforward statutory command, we do not resort to legislative history to cloud a statutory text that is clear. If the statutory language is not entirely transparent, we employ traditional canons of construction before

8

> reverting to legislative history . . . [to] assist [us] in determining the meaning of a particular statutory provision by focusing on the broader, statutory context . . . If the statutory language is ambiguous, however, courts may examine extrinsic materials, including legislative history, to determine Congressional intent.

*Moss v. GreenTree-Al, LLC*, 378 B.R. 655, 658 (S.D.Ala.,2007) (internal citations and quotes omitted).

Congress first added the phrase "single asset real estate" to the Bankruptcy Code in its enactment of the Bankruptcy Reform Act of 1994. However, the phrase was common in bankruptcy practice decades earlier. *See In re KKEMKO, Inc.*, 181 B.R. 47, 49 (Bankr. S.D. Ohio 1995). Single asset real estate cases were first separated from other cases under Chapter XII of the Bankruptcy Act of 1898 (entitled then as "Real Property Arrangements by Persons Other Than Corporations"). It was common at that time for an individual or partnership to own real estate that "was obligated on bond issues secured by trust indentures and owned by large numbers of individual holders." *Id.* at 50 (quoting H. Miles Cohn, *Single Asset Chapter 11 Cases*, 26 Tulsa L.J. 523 (1991)). During the early 1900s, and particularly during the Great Depression, real estate owners would seek protection under Chapter XII when they could not pay their bond issues or mortgages. These debtors typically owned a single piece of property and it was usually a developed piece of property like "an apartment house or office building." *Id.* Bankruptcy courts again saw increased filings of single asset cases in the recession years of the mid-1970's and mid-1980's. During these years, many partnerships and corporations were formed for the purpose of acquiring and managing one piece of investment property. The courts found these owners often would seek bankruptcy protection with the sole purpose "to postpone foreclosure, and with no serious hope of reorganization." *Id.*

9

Case 08-14135    Doc 127    Filed 01/08/09    Entered 01/08/09 11:08:14    Desc Main
Document      Page 9 of 12

In 1978, Congress focused its attention, again, on single asset real estate cases and attempted to pass a provision very similar to § 362(d)(3). The unpassed Senate Bill 2266 provided that "property is not necessary to an effective reorganization of the debtor if it is real property on which no business is being conducted by the debtor *other than the business of operating the real property and activities incident thereto. . . .*" *In re CBJ Dev. Inc.*, 202 B.R. 467, 471-472 (9th Cir. B.A.P. 1996)(citing *In re Fields*, 127 B.R. 150, 152 n.1 (Bankr. W.D. Tex. 1991) (quoting 11 U.S.C. § 362(d)(proposed), S. 2266, 95th Cong. 2d Sess., as reported by the Senate Judiciary Committee and the Senate Finance Committee). The report to Senate Bill 2266 explained the purpose of the "exception [introduced in the bill] is to reach the single-asset apartment type cases which involve primarily tax-shelter investments and for which the bankruptcy laws have provided a too facile method to relay [sic] conditions, but not the operating shopping center and hotel cases where attempts at reorganization should be permitted." *Id.* at 472 (citing *In re Fields*, 127 B.R. at 153)(quoting S. Rep. No. 989, 95th Cong., 2d Sess. 53 (1978)).

This history shows that Congress understood the common usage of the term "single asset real estate" when it enacted § 101(51B), and in doing so, it "meant a building or buildings which were intended to be income producing, or raw land." *KKEMKO*, 181 B.R. at 51. The *Philmont* court noted that the term single asset real estate was "well known" at the time Congress formally wrote it into the Code and it "essentially refer[ed] to real estate entities attempting to cling to ownership of real property in a depressed market, . . . rather [than] businesses involving manufacturing, sales, or services. 181 B.R. at 223 (citation omitted).

Congress enacted §§ 101(51B) and 362(d)(3) to speed up cases "in a particular familiar

10

bankruptcy situation. That situation is where the owner of an encumbered building is attempting to avert loss of his building to his major lender who is grossly undersecured, and where there is no real hope that the owner can come forth with a viable confirmable chapter 11 plan." *Id.*

Does this case fit within the parameters of what Congress was trying to cover according to the history described in the preceding paragraphs? Holiday Isle's only activities are those incident to selling its remaining interest in the property. Although its activities are not as passive as the activities of some debtors who have been termed SAREs, Holiday Isle is clearly a holder of real estate that is attempting to delay foreclosure of its interest by one secured creditor. Although RBC is allegedly oversecured, a situation not common in the cases, the debtor is "attempting to cling to ownership of real property in a depressed market." *In re Philmont Dev. Co.*, 181 B.R. at 223.

Holiday Isle is not in the business of making a product or rendering a service as in the cases finding a debtor is not a SARE. *See In re Scotia Pacific Co., LLC*, 508 F.3d 214 (5th Cir. 2007)(debtor owned a timber business).. The *Scotia Pacific* court

> inquire[d] into the nature of revenue generation on and by the property, that is, whether the revenue is the product of entrepreneurial, active labor and effort - - and thus is not single asset real estate - - or is simply and passively received as investment income by the debtor as the property's owner - - and thus is single asset real estate . . . Real property that, for the generation of revenues, requires the active, day-to-day employment of workers and managers other than or additional to the principals of the debtor, and that would not generate substantial revenue without such labor and efforts, should not be regarded as single asset real estate.

*Id.* (quoting *In re Scotia Dev., LLC*, 375 B.R. 764, 777-78 (Bankr. S.D. Tex. 2007). *Scotia Pacific* held that it was significant that the debtor timber company performed its business on the real estate. It did not sell the underlying real estate. Holiday Isle does not perform a business operation on the property. Its business is sale of the property.

Holiday Isle is more like the debtor in *Kara Homes, Inc. v. Nat'l City Bank (In re Kara Homes, Inc.*), 363 B.R. 399 (Bankr. N.J. 2007), in which debtors owned real estate projects that constructed and sold single family homes and condominiums.

> [I]t [was] often necessary [for the debtor] to acquire the land on which to build the homes, and plan the community in which they lie; likewise, it is necessary to market those homes for sale and maintain the properties. All of the activities identified by the Debtors as reflective of 'business operations' are merely incidental to the Affiliated Debtors efforts to sell the these [sic] homes or condominium units and do not constitute substantial business, as illustrated in *Kkemko*.

*Id.* at 406.

The Court concludes that Holiday Isle is a single asset entity as defined by 11 U.S.C. § 105(51B) and is subject to all of the benefits and burdens of the designation. Holiday Isle's operations are for the purpose of selling its units and this activity makes Holiday Isle a SARE. Although Holiday Isle is not holding its units awaiting an increase in value, it is holding its units awaiting buyers.

IT IS ORDERED that RBC Real Estate Finance, Inc.'s Motion for Determination That Debtor is the Owner of "Single Asset Real Estate" is GRANTED.

Dated: January 8, 2009

*/s/ Margaret A. Mahoney*
MARGARET A. MAHONEY
U.S. BANKRUPTCY JUDGE