IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| IN RE: | * | |
| | * | CASE NUMBER |
| HOLIDAY ISLE, LLC, | * | 08-14135-WSS-11 |
| | * | |
| Debtor. | * | |

**RESTATED AMENDED AND MODIFIED**
**PLAN OF REORGANIZATION**

HOLIDAY ISLE, LLC, the above named Debtor, proposes the following Plan of Reorganization with its creditors:

**ARTICLE I**
**DEFINITIONS, INTERPRETATION, AND RULES OF CONSTRUCTION**

**A.** **Definitions.**

The following terms, when used in this Plan of Reorganization, shall, unless the context otherwise requires, have the following meanings:

1.01    "Allowed Claim" shall mean a claim:

(a)    in respect of which a proof of claim has been filed with the Court on or before the applicable Bar Date, as hereinafter defined;

(b)    which is scheduled in the schedules of assets and liabilities and statement of financial affairs of the Debtor prepared and filed with the Court which is not listed as either disputed, contingent or unliquidated as to amount; and, in either of the foregoing cases;

(c)    to which no objection to the allowance thereof is interposed; or

(d)    to which, if objection is interposed, the claim is allowed by an order or judgment which is no longer subject to initiation or continuation of appeal or certiorari proceeding.

1.02    "Allowed Secured Claim" shall mean an Allowed Claim arising on or before the Petition Date that is secured by a valid lien, as hereinafter defined, on property of the Debtor, which lien is not void or voidable under state or federal law, including any provision of the Bankruptcy Code, to the extent of the value (which is either agreed to by the Debtor pursuant to this Plan or, in the absence of an agreement, as determined in accordance with Section 506 of the Bankruptcy Code) of the interest of the holder of such Allowed Claim pursuant to this Plan.

-1-

That portion of such Allowed Claim exceeding the value of the security held therefore shall be a Priority Claim or an Allowed Unsecured Claim, as determined by the Bankruptcy Code without regard to its former secured status.

  1.03 "Allowed Unsecured Claims" shall mean all Allowed Claims which are claims other than Priority Claims or Allowed Secured Claims.

  1.04 "Award of Interpleader Funds" shall mean either a judgment or order in the Interpleader Action which is no longer subject to initiation or continuation of appeal or certiorari proceeding which awards some or all of the Interpleader Funds to a Putative Purchaser Litigant who is a party to the Interpleader Action, limited, however, to a prorata share of the total amount awarded to all Putative Purchaser Litigants who are parties to the Interpleader Action.

  1.05 "Bankruptcy Code" shall mean Section 101 et seq. of Title 11 of the United States Code, as amended from time to time.

  1.06 "Bar Date" shall mean any particular deadline established by the Court pursuant to Bankruptcy Rule 3003(c)(3) after which (i) any proof of claim filed has no effect on this Plan, and (ii) the holder of such proof of claim has no right to participate with other creditors under the Plan.

  1.07 "Claim" shall have the meaning given it in Section 101(4) of the Bankruptcy Code.

  1.08 "Class" shall mean any class into which Claims are classified pursuant to Article II hereof.

  1.09 "Closing Date of Postpetition Sale of Condominium Unit" shall mean the date on which the documents conveying Debtor's Condominium Unit to a purchaser are signed and delivered.

  1.10 "Confirmation Date" shall mean the date upon which the Order of Confirmation is entered by the Court.

  1.11 "Confirmation Order" means the Order of the Bankruptcy Court confirming this Plan.

  1.12 "Court" shall mean the United States Bankruptcy Court for the Southern District of Alabama, Southern Division, presiding over reorganization cases, or if necessary, the United States District Court for said district having original jurisdiction over said reorganization cases.

  1.13 "Creditors" shall mean all persons holding claims against the Debtor.

-2-

Case 08-14135 Doc 416 Filed 10/30/09 Entered 10/30/09 17:10:08 Desc Main
Document  Page 2 of 16

1.14 "Debtor" or "Debtor" shall mean HOLIDAY ISLE, LLC, the debtor in this Chapter 11 case.

1.15 "Debtor's Condominium Unit" shall mean each of the condominium units owned by Debtor located at 1601 Bienville Boulevard, Holiday Isle Condominium, Dauphin Island, Alabama 36528.

1.16 "Debtor's Portion of Debtor's Condominium Unit Sales Proceeds" shall mean the following: (1) Until the allowed amount of the secured claim owed to RBC Real Estate Financing Inc. is paid in full, the amount of 15% of the Net Sales Proceeds received by Debtor from the sale of each of Debtor's Condominium Units and (2) after payment in full of the allowed amount of the secured claim owed to RBC Real Estate Financing Inc. is paid in full, 100% of the Net Sales Proceeds received by Debtor from the sale of each of Debtor's Condominium Units.

1.17 "Effective Date" shall mean the first business day on which no stay of the Confirmation Order is and remains in effect that is after thirty (30) calendar days following the Confirmation Date.

1.18 "Interpleader Action" shall mean, that certain lawsuit currently pending in the U.S. District Court for the Southern District of Alabama, styled <u>RBC Bank (USA) v. Holiday Isle, LLC, et al.</u>; Case Number 1:09-cv-00038-WS-M.

1.19 "Interpleader Funds" shall mean those monies currently deposited with the United States District Court for the Southern District of Alabama by RBC Bank (USA) in the Interpleader Action.

1.20 "Lien" shall mean any charge against or interest in property to secure payment of a debt or performance of an obligation including, without limitation, any judicial or equitable lien, security interest, mortgage, deed of trust and statutory lien as defined in Section 101 of the Bankruptcy Code.

1.21 "Net Sales Proceeds" shall mean the gross sales proceeds from the sale of each of Debtor's Condominium Units less the amount of closing costs Debtor is required to pay on the sale of that unit, excluding payment to RBC Real Estate Financing Inc. on its mortgage.

1.22 "Plan" shall mean this Plan of Reorganization in its present form or as it may be amended or supplemented from time to time.

1.23 "Postpetition Sale of Debtor's Condominium Unit" shall mean the sale by Debtor to a party under terms which shall be incorporated into a written sales agreement and which shall (1) be approved by the Court so long as Plan has not been confirmed or (2) if the Plan has been confirmed, be for an amount that is equal to or greater than the amount of the Minimum Release Price for the type of unit being sold per the Minimum Release Price Schedule filed under seal

with the Court unless otherwise mutually agreed upon by Debtor and RBC Real Estate Financing Inc.

    1.24    "Priority Claims" shall include all Claims which are entitled to priority pursuant to Section 507 of the Bankruptcy Code.

    1.25    "Professional" shall mean any professional employed in this Chapter 11 case with the approval of the Bankruptcy Court pursuant to Section 327 or Section 1103 of the Bankruptcy Code.

    1.26    "Pro Rata" shall mean with respect to any Allowed Claim in any Class, the proportion that the amount of such Allowed Claim bears to the aggregate amount of all of the Allowed Claims of such Class.

    1.27    "Putative Purchaser Litigant" shall mean any person who has filed a lawsuit or arbitration demand to recover from Debtor damages and/or specific funds arising out of his/her/its deposit of monies or a letter of credit to secure a preconstruction purchase of a condominium unit at Holiday Isle Condominiums and has not received a final disposition of said lawsuit as of the Confirmation Date.

    1.28    "Secured Claims" shall mean those claims whose payment is secured by a Lien.

    1.29    "Unsecured Creditors" shall mean the holders of Allowed Unsecured Claims.

**B.    Interpretation, Rules of Construction, Computation of Time.**

    1.    Any term used in this Plan that is not defined in this Plan, either in Article I (Definitions) or elsewhere, but that is used in the Bankruptcy Code or the Bankruptcy Rules has the meaning assigned to that term in (and shall be construed in accordance with the rules of construction under) the Bankruptcy Code or the Bankruptcy Rules. Without limiting the foregoing, the rules of construction set forth in Section 102 of the Bankruptcy Code shall apply.

    2.    The words "herein," "hereof," "hereto," "hereunder" and others of similar import refer to this Plan as a whole and not to any particular article, section, subsection or clause contained in this Plan.

    3.    Unless specified otherwise in a particular reference, a reference in this Plan to an Article or a Section is a reference to that Article or Section of this Plan.

    4.    Any reference in this Plan to a document being in a particular form means that the document shall be in substantially such form.

5. Any reference in this Plan to an existing document means such document, as it may have been amended, restated, modified, or supplemented from time to time.

6. Whenever from the context it is appropriate, each term stated in either the singular or the plural shall include both the singular and the plural.

7. In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

8. All exhibits to this Plan are incorporated into this Plan, and shall be deemed to be included in this Plan, regardless of when they are filed.

## ARTICLE II
## CLASSIFICATION OF CLAIMS AND INTERESTS
## AND STATEMENT OF CLASSES OF CLAIMS NOT IMPAIRED

The following is a designation of the classes of claims and interests under this Plan. Administrative claims and priority tax claims of the kinds specified in Sections 507(a)(1), 507(a)(7), and 507(a)(8) of the Bankruptcy Code, respectively, have not been classified and are excluded from the following classes, in accordance with Section 1123(a)(1) of the Bankruptcy Code. A claim or interest is classified in a particular class only to the extent that the claim or interest qualifies within the description of that class and is classified in a different class to the extent that any remainder of the claim or interest qualifies within the description of such different class. A claim or interest is in a particular class only to the extent that the claim or interest is an Allowed Claim or Allowed Interest in that class and has not been paid, released or otherwise satisfied before the Effective Date.

2.1 For the purposes of distribution under this Plan, priority claims, secured claims, general unsecured claims, and equity holder claims shall be classified as follows:

Class 1 - Secured - RBC Real Estate Finance Inc.

Class 2 - Disputed - Claims of Putative Purchaser Litigants Claiming an Interest in Funds Escrowed at Bay Title

Class 3 - Disputed - Claims of Putative Purchaser Litigants Claiming an Interest in Interpleader Funds

Class 4 - General Unsecured Creditors, Except for the Claims of Insiders

Class 5 - Unsecured Claim of Insiders

Class 6 - Equity Security Holders

2.2     This Plan contemplates that the claims of all creditors in Classes 1, 2, 3, 4 and 5 shall be impaired and the interests of holders of Class 6 shall be impaired.

## ARTICLE III
## UNCLASSIFIED CLAIMS
## ADMINISTRATIVE AND PRIORITY CLAIMS

3.1     **Unclassified Claims - Administrative**

A.  **General.**  Subject to the bar date provisions herein, each holder of an Allowed Claim for administrative costs and expenses of the kind specified in Section 507(a)(1) or Section 507(b) of the Bankruptcy Code shall receive, on account of and in full satisfaction of such Allowed Claim, cash equal to the amount of such Allowed Claim, unless the holder agrees to less favorable treatment of such claim.  Such Allowed Claims for administrative expenses and costs shall be paid by the Debtor.  Except as stated in Section 3.2 below, payment on an administrative claim will be made when such payment would have become due in the ordinary course of the Debtor's business or under the terms of the contract between the parties in the absence of this Reorganization Case.  Debtor shall pay the 2009 ad valorem taxes due Mobile County Revenue Commissioner accruing post petition by paying the same out of the proceeds of sale as described in Paragraph 3.3 below, and by paying any unpaid balance in full plus interest computed in accordance with Section 511(a) of the Bankruptcy Code on or before December 31, 2010. The ad valorem taxes for 2010 and all years thereafter will be paid as they fall due on the ordinary due date.

B.  **Bar Date for Administrative Claims.**  All applications for final compensation of Professionals for services rendered and for reimbursement of expenses incurred on or before the Effective Date (including, without limitation, any compensation requested by any Professional or any other entity for making a substantial contribution in the Reorganization Case, but excluding Professionals whose services are provided in connection with an ongoing matter which has not been completed as of the Effective Date and whose fees are calculated at the completion of that matter) and all other requests for payment of administrative costs and expenses incurred before the Effective Date under Sections 507(a)(1) or 507(b) of the Bankruptcy Code (except only for claims for trade debt incurred in the ordinary course of business and claims under 28 U.S.C. § 1930) shall be filed no later than 60 days after the Effective Date, unless such date is extended by the Bankruptcy Court on notice to the Debtor and other interested parties.  Any such claim that is not filed within this deadline shall be forever barred; and any holders of administrative claims who are required to file a request for payment of such claims and who do not file such requests by the applicable bar date shall be forever barred from asserting such claims against the Debtor, the Debtor-in-Possession, or any of their respective property.  Any professional fees or reimbursement of expenses incurred subsequent to the Effective Date by the Debtor may be paid by such Debtor without application to the Bankruptcy Court.  Any professional fees or reimbursement of expenses for Professionals whose services are provided in connection with an ongoing matter initiated prior to the Effective Date which has not been completed as of the Effective Date and whose fees are to be calculated at the time of completion of that matter shall

-6-

Case 08-14135    Doc 416    Filed 10/30/09    Entered 10/30/09 17:10:08    Desc Main
                Document      Page 6 of 16

be required to obtain approval of the amount of said fee by the Bankruptcy Court within a reasonable time after completion of the matter for which said Professional provided services. Any dispute regarding the payment of such post Effective Date professional fees and expenses which relate to this Reorganization Case or this Plan shall be determined by the Bankruptcy Court.

3.2 **Treatment of Administrative Claims of Professionals, including Arbitrators.** The Professional Administrative Claims of Debtor's attorney, Debtor's special attorneys, Unsecured Creditors' Committee's attorney, Debtor's accountant, and any other Professional holding an allowed administrative claim shall be paid in full on the Effective Date, on such other terms as the parties may agree, or within 30 days after the allowance of said claim in the event said claim is allowed after the Effective Date.

3.3 **Priority Tax Claims**. Each holder of an allowed priority claim for taxes of the kind specified in Bankruptcy Code Section 507(a)(8) shall receive deferred cash payments over a period not exceeding five years from the date the Chapter 11 Petition was filed in this case in an aggregate amount equal to the amount of such Allowed Claim plus interest from the Confirmation Date on the unpaid portion of such Allowed Claim (without penalty of any kind). Debtor shall pay the priority claim of the Mobile County Revenue Commissioner plus interest at the statutory rate determined under 11 USC §511(a) as of the calendar month in which the Plan is confirmed to accrue beginning on the Confirmation Date by paying the amount of the unpaid taxes owed on each unit (including the portion of Mobile County Revenue Commissioner's claim for ad valorem taxes due on October 1, 2008) from the Debtor's Portion of Debtor's Condominium Unit Sales Proceeds on any unit sold by Debtor and, in addition thereto, by paying the balance of the Priority Claim in eight (8) semiannual installments equal to 1/8th of the balance beginning December 31, 2009, and each consecutive semiannual anniversary date thereafter until the full amount of the Priority Claim plus interest is paid in full. Nothing in this Plan shall alter or cancel any liens of the Mobile County Revenue Commissioner as provided under Alabama law.

## ARTICLE IV
## SECURED CLAIMS

4.1 **Class 1: Secured - RBC Real Estate Finance Inc.** Debtor is indebted to RBC Real Estate Finance Inc. (hereinafter "RBC REFI") in the estimated amount of $20,500,000.00 including principal, interest, attorney's fees, expenses and other charges due under the loan documents, which debt is secured by a mortgage on 86 separate residential Debtor Condominium Units and one commercial Debtor Condominium Unit, by a lien on the proceeds of the Debtor's Condominium Units, by a pledge of the earnest money deposits and proceeds of letters of credit to which Debtor is entitled, by an assignment of leases, rents, and income owned by Debtor that are derived from the Holiday Isle Condominium project, and by a pledge of all cash or cash equivalents derived by Debtor from the Holiday Isle Condominium project. Debtor proposes to pay RBC REFI the full amount of its Allowed Secured Claim plus interest at a rate which is 2% greater than the federal prime interest rate in existence on the Confirmation Date (said interest to

begin accruing at said rate on the Confirmation Date of the Plan) by paying RBC REFI 85% of the Net Sales Proceeds derived by Debtor from the sale of Debtor's Condominium Units no later than 48 hours after the Net Sales Proceeds are available to Debtor.  All payments shall be applied by RBC REFI first to the accrued interest, attorney's fees and other charges, and the balance to the principal of the Allowed Secured Claim.  Payments shall continue until the Allowed Secured Claim of RBC REFI is paid in full.  RBC REFI shall release and/or cancel its lien against each Debtor's Condominium Unit at the time of the closing of each postpetition sale of Debtor's Condominium Unit for a price at or in excess of the sum of the Minimum Release Price as described in paragraph 1.23 of this Plan.  RBC REFI shall retain its lien (to the extent of perfection) against the Interpleader Funds and, in the event RBC REFI prevails in establishing its priority position in the Interpleader Action as to all or part of the Interpleader Funds, shall consent to Debtor's use of its portion of the Interpleader Funds for the purposes for which RBC REFI has heretofore consented in settling prior motions to use cash collateral filed by Debtor.  RBC REFI shall retain its properly perfected liens, if any, against all other cash collateral of the Debtor; provided, however, that with respect to Debtor's Portion of Debtor's Condominium Unit Sales Proceeds, RBC REFI shall be deemed to have consented to Debtor's use of said cash collateral for the purposes for which RBC REFI has consented in settling prior motions to use cash collateral filed by the Debtor.  RBC REFI shall retain its mortgage against each Debtor's Condominium Unit until closing of each sale to secure the balance of the Allowed Secured Claim of RBC REFI.  The remaining unsold Debtor's Condominium Units shall be sold so as to present signed sales contracts for the number of sales set out on the Schedule of Proposed Sales attached hereto as Exhibit A beginning with the month ending November 30, 2009 for an amount that is equal to or greater than the amounts stated as the Minimum Release Price, as defined in the text of Section 1.23 of this Plan, on the Minimum Release Price Schedule.  The Minimum Release Price Schedule shall be reviewed by the Court, the U.S. Bankruptcy Administrator for the Southern District of Alabama, and the attorneys and representatives of RBC REFI and maintained in confidence by all parties viewing the same.  The information on the Minimum Release Price Schedule shall be retained as confidential by all persons who view the same and no one viewing the same shall disclose the information contained therein except in connection with a claimed sales default as hereafter described.  In the event Debtor fails to present a signed sales contract for the number of sales of Debtor's Units projected on Exhibit A for a specified month at a price equal to or greater than the prices set out on the Minimum Release Price Schedule or fails to close any such sale by the end of the succeeding month, the Debtor shall be in Sales Default under the provisions of this Plan.  A Sales Default shall be deemed an "Event of Default" under the Loan Agreement, Mortgage and Security Agreement, Note, and amendments thereto, and all other RBC REFI loan documents.  Upon the occurrence of a Sales Default under this Plan, RBC REFI shall be entitled to foreclose its mortgage on all remaining unsold Debtor's Condominium Units.  Nothing contained herein shall prevent RBC REFI from agreeing in writing to allowing Debtor to sell the unsold units at prices below the minimum release prices contained on the Minimum Release Price Schedule.  Upon said foreclosure RBC REFI shall give Debtor a credit against the balance of Debtor's indebtedness owed to RBC REFI as required under the loan documents and applicable state law.  Except as provided by this Plan and to the extent the same are not inconsistent with the provisions of this Plan, all terms of the loan documents between RBC REFI's predecessor in interest and Debtor shall remain in full force

and effect.  Debtor agrees to and shall execute any additional documentation reasonably necessary or required to continue perfection or perfect any continuing liens in favor of RBC REFI as provided in the Plan.

      4.2      **Class 2: Disputed - Claims of Putative Purchaser Litigants Claiming an Interest in Funds Escrowed at Bay Title.**  Class 2 consists of Putative Purchaser Litigants of Units 115, 305, 308, 316, 514, 602, 713, and 717, namely Warren, McAleer et al., Tortajada, Sr. et al., Rapetti, Pace & Crisp, Tortajada, Jr., Golonkas, and Thompson, et al.  These Putative Purchaser Litigants have filed proceedings to recover monies and/or deposits from Debtor.  Debtor disputes the claims of each Class 2 Creditor and contends it is entitled to receive the deposits paid by each Class 2 creditor. Either lawsuits or arbitration proceedings are pending to determine whether Debtor is liable to the Class 2 Creditor or the Class 2 creditors liable to Debtor.  Debtor shall continue to litigate with each Class 2 Creditor until a final judgment is entered determining the rights or liabilities of each Class 2 creditor.  In the event, final judgment is entered in favor of a Class 2 creditor ordering that the Class 2 creditor is entitled to recover an amount equal to or greater than the amount of deposit paid by the Class 2 creditor and held by Bay Title Insurance Company, Bay Title Insurance Company shall release and pay the appropriate amount to the Class 2 creditor and the Class 2 creditor shall have a general unsecured claim (Class 4) for the balance, if any.  Said general unsecured claim shall be treated and paid in accordance with Section 5.1 of the Plan except that said Class 2 creditor's claim shall be paid interest at the federal judgment interest rate beginning on the Confirmation Date of the Plan.  If the amount of the Class 2 creditor judgment is less than the amount held by Bay Title Insurance Company, Bay Title Insurance Company shall pay the amount of the judgment from the funds held by Bay Title Insurance Company that were deposited by that Class 2 creditor and Bay Title Insurance Company shall pay the balance to Debtor.  If the judgment is in favor of the Debtor, Bay Title shall pay the funds held by Bay Title Insurance Company that were deposited by the Class 2 creditor to Debtor and Debtor shall hold the same subject to RBC REFI's cash collateral lien and shall be authorized to use the same for the purposes described in Section 4.1 of this Plan.

      4.3      **Class 3: Disputed - Disputed Claims of Putative Purchaser Litigants Claiming an Interest in Interpleader Funds.**  Class 3 consists of all Putative Purchaser Litigants who are not in Class 2.  These Putative Purchaser Litigants have filed proceedings to recover monies and/or deposits from Debtor.  Debtor disputes the claims of each Class 3 creditor and contends Debtor is entitled to receive the deposits paid by each Class 3 creditor. Either lawsuits or arbitration proceedings are pending to determine whether Debtor is liable to the Class 3 creditor or the Class 3 creditor is liable to Debtor. Debtor shall continue to litigate with each Class 3 creditor until a final judgment is entered determining the rights or liabilities of each Class 3 creditor.  For clarification purposes, the final order of the United States District Court in the Interpleader Action shall govern distribution of the Interpleader Funds, except any excess funds awarded to Debtor will be remitted to Debtor to be paid by Debtor to RBC REFI.  Each Class 3 creditor is or should be a party to the Interpleader Action.  In the event  final judgment is entered in favor of a Class 3 creditor ordering that the Class 3 creditor is entitled to recover an amount from the Debtor, that Class 3 creditor will assert that said judgment  entitles it to seek

recovery of the amount of its judgment from the Interpleader Funds.  In the event the Court in the Interpleader Action determines that the Class 3 creditor is entitled to an award from the Interpleader Funds, payment from the Interpleader Funds shall be paid to said Class 3 creditor in the amount ordered in a final judgment in the Interpleader Action and the Class 3 Creditor shall have a general unsecured claim (Class 4) for the balance of its allowed claim, if any.  Said general unsecured claim shall be treated and paid in accordance with Section 5.1 of this Plan except that said Class 3 creditor's claim shall be paid interest at the federal judgment interest rate beginning on the Confirmation Date of the Plan.  In the event the court in the Interpleader Action determines that the Class 3 creditor is not entitled to recover its judgment from the Interpleader Funds, the Class 3 creditor shall have a general unsecured claim for the amount of the judgment and shall be treated and paid in accordance with the treatment and payment of the Class 4 General Unsecured Creditors (Section 5.1) except that said Class 3 creditor's claim shall be paid interest at the federal judgment interest rate beginning on the Confirmation Date of this Plan.  In the event final judgment is entered in favor of the Debtor, said judgment shall be in full and final satisfaction of all claims of the Class 3 creditor against the Debtor and Debtor shall seek an award of Interpleader Funds subject to the lien of RBC REFI.

## ARTICLE V
## GENERAL UNSECURED CLAIMS

5.1     **Class 4:  General Unsecured Creditors, Except for the Claims of Insiders.**  Debtor shall satisfy the claims of all general unsecured creditors holding allowed unsecured claims, except for the claims of The Mitchell Company, but including the prepetition claim of Burr Forman by paying each Class 5 general unsecured creditor 100% of the principal amount of the allowed amount of each Class 5 claim and interest computed beginning on the Confirmation Date, at the rate of the federal prime plus 2% as to all unsecured creditors with allowed claims who do not have judgments and at the federal judgment rate for those unsecured creditors with allowed claims holding judgments against the Debtor.  Said sum shall be paid in full satisfaction of each Class 4 creditor's claim, and payment shall be paid from Debtor's Portion of Debtor's Condominium Unit Sales Proceeds (Section 1.16 of this Plan) beginning on a date subsequent to payment in full of the Class 1 Creditor.  Each Class 4 Creditor shall receive a prorata share of 85% of Debtor's Portion of Debtor's Condominium Unit Sales Proceeds after the Class 1 Creditor is paid in full and shall continue to receive the same until the full Allowed Claim of each Class 4 creditor is paid with interest.  The distribution to each said unsecured creditor shall be paid within five business days following receipt by the Debtor of the Debtor's Condominium Unit Sales Proceeds.

5.2     **Class 5:  Unsecured Claims of Insider.**  Debtor is indebted to insider, The Mitchell Company, Inc., for a prepetition debt.  After payment in full of all Professional Fee Administrative Claims, all Class 1, 2, 3, and 5 Claims, the Class 5 claim shall be paid from Debtor's Portion of Debtor's Condominium Unit Sales Proceeds.

## ARTICLE VI
## EQUITY SECURITY HOLDER CLAIMS

6.1 **Class 6: Equity Security Holder Claims**. Debtor has issued Membership Interests representing 100% ownership in Debtor to The Mitchell Company, Inc. The Mitchell Company, Inc. shall retain its Membership Interest in the Debtor.

## ARTICLE VII
## RETENTION OF CLAIMS

7.1 Debtor retains all claims which it may have against any and all persons, entities, companies, and banks. In particular, Debtor retains its claim to the Interpleader Funds, its claims against Clarion Mortgage Capital (CV-07-901236) for failure to pay a letter of credit in favor of debtor; its claims against Allen L. McLeod, Jr. (CV-08-901322), against Joseph J. Campus, IV (CV-08-901321), and against Joseph J. Campus, III (CV-08-901323) for damages for wrongful placement of liens; its claim against Marsh USA, Inc. as insurance agent for Debtor arising out of negligent procurement of windstorm coverage, its claim against W. G. Yates & Sons Construction Co. for damages arising out of performance of the construction contract, its claim for recovery of the account receivable due for rentals owed from Unit 501, and its claims which were settled prepetition but for which Debtor has not received payment of the settlement proceeds.

## ARTICLE VIII
## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

8.1 **Treatment of Executory Contracts and Leases.** The Debtor hereby rejects all executory contracts and unexpired leases not heretofore or hereafter assumed prior to the Confirmation Date of this Plan, except its agreements with the Condominium Association, its lease agreement with ACP Real Estate, Inc., its listing agreements with ACP Real Estate, Inc., and its management agreement with The Mitchell Company, Inc. which Debtor assumes.

## ARTICLE XI
## MEANS FOR EXECUTION AND IMPLEMENTATION OF PLAN

9.1 **Funding of Plan**. After the Effective Date of the Plan, the Debtor shall sell each Debtor's Condominium Unit on such terms as it deems reasonable upon approval by RBC REFI and shall use the proceeds of said sales to fund the distributions required to be made under the Plan. Debtor shall also use the proceeds of all recoveries on its claims for retainage of preconstruction purchase deposits and the proceeds of any recovery from any claim it has and may hereafter assert to fund the Plan. Debtor shall also use any and all funds in the Debtor-in-Possession account, the RBC REFI depository account, and the Interpleader Account to fund the Plan and pay operating expenses.

9.2     **Management of the Debtor.**  Following the Effective Date, the operations of the Debtor shall continue to be the responsibility of its Member, The Mitchell Company, Inc., acting by and through its representative Paul Charles Wesch.  The Member of the Debtor shall have the responsibility for the selection of the Manager of the Debtor, if it so desires.

9.3     **Powers of Member.**  After the Confirmation Date, the Member shall have all powers accorded by law to put into effect and carry out the Plan and the Confirmation Order.

9.4     **Continued Limited Liability Company Existence**.  From and after the Effective Date, the Debtor shall continue to exist as a separate limited liability company, with all of the powers of a limited liability company under Alabama law.

9.5     **Section 1146 Exemption.**  Pursuant to §1146(a) of the Bankruptcy Code, the making or delivery of any instrument of transfer pursuant to, in implementation of, or as contemplated by the Plan or the revesting, transfer, sale of any real or personal property of, by or in the Debtor or Reorganized Debtor pursuant to, in implementation of, or as contemplated by the Plan, shall not be taxed under any state or local law imposing a stamp tax, transfer tax, documentary tax, recording tax or similar tax or fee.

9.6     **Exemptions from Securities Laws**.

9.6.a     **General**.  Pursuant to §1125(e) of the Bankruptcy Code, the transmittal of the Plan solicitation packages (including the Disclosure Statement, the Plan and the Ballot), the Debtor's solicitation of acceptances of the Plan, and the issuance and distribution of Reorganized Holiday Isle, LLC Membership Interest and any other securities pursuant to the Plan, and the Reorganized Debtor's and any other Person's participation in such activities, are not and will not be governed by or be subject to any otherwise applicable law, rule or regulation governing the solicitation of acceptance or rejection of a plan of reorganization or the offer, issuance, sale or purchase of securities.

9.6.b     **Issuance of Reorganized Holiday Isle, LLC, Membership Interest Under the Plan**.  Section 1145(a)(1) of the Bankruptcy Code exempts the issuance of securities under a plan of reorganization from registration under the Securities Act and under equivalent state securities or "blue sky" laws if three principal requirements are satisfied: (i) the securities must be issued "under a plan" or reorganization by the debtor or its successor under a plan; (ii) the recipients of the securities must hold a claim against the Debtor, an interest in the Debtor or a claim for an administrative expense against the Debtor; and (iii) the securities must be issued entirely in exchange for the recipient's claim against or interest in the Debtor, or "principally" in such exchange and "partly" for cash or property.  The Debtor believes that the exchange of the Reorganized Holiday Isle, LLC, Membership Interest for Interests under the Plan satisfies the requirements of §1145(a)(1) of the Bankruptcy Code and is, therefore, exempt from registration under federal and state securities laws.  The Debtor also believes that the offering, issuance and distribution of the Reorganized Holiday Isle, LLC, Membership Interest pursuant to the Plan shall be exempt from registration under Section 4(2) of the Securities Act and shall be exempt

from any state or local law requiring registration, notification, qualification, or exemption prior to the offering, issuance, distribution, or sale of securities.

      9.7      **Revesting of Assets.** Except as otherwise provided in any provision of this Plan, on the Effective Date all property of the Estate shall revest in the Reorganized Debtor, all free and clear of all claims, liens, encumbrances and other interests of creditors and equity security holders. From and after the Effective Date, the Reorganized Debtor, may use, acquire, and dispose of property without supervision by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code, other than those restrictions expressly imposed by this Plan and the Confirmation Order.

      9.8      **Discharge of Debtor and Injunction.** The rights afforded in this Plan and the treatment of all claims and equity interests therein shall be in exchange for and in complete satisfaction, discharge, and release of all claims and equity interests of any nature whatsoever, including any interest accrued on such claims from and after the Petition Date, against the Debtor, or any of its assets or properties. Except as otherwise provided in this Plan or the Confirmation Order (i) on the Effective Date, the Debtor shall be deemed discharged and released to the fullest extent permitted by Section 1141 of the Bankruptcy Code from all claims and interests, including, but not limited to, demands, liabilities, claims and interests that arose before the Confirmation Date and all debts of the kind specified in Sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, whether or not: (a) a proof of claim or proof of interest based on such debt or interest is filed or deemed filed pursuant to section 501 of the Bankruptcy Code, (b) a claim or interest based on such debt or interest has accepted the Plan; and (ii) all Persons shall be precluded from asserting against the Reorganized Debtor, its successors, or its assets or properties any other or further claims or equity interests based upon any action or omission, transaction, or other activity of any kind or nature that occurred prior to the Confirmation Date. Except as otherwise provided in this Plan, the Confirmation Order shall act as a discharge of any and all claims against and all debts and liabilities of the Debtor, as provided in sections 524 and 1141 of the Bankruptcy Code, and such discharge shall void any judgment against the Debtor at any time obtained to the extent that it relates to a claim discharged.

      Except as otherwise provided in this Plan or the Confirmation Order, on and after the Effective Date, all Persons who have held, currently hold or may hold a debt, claim or interest discharged pursuant to the terms of this Plan are permanently enjoined from taking any of the following actions on account of any such discharged debt, claim, or interest: (1) commencing or continuing in any manner any action or other proceeding against the Debtor or the Reorganized Debtor, its successors or its property; (2) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order against the Debtor or the Reorganized Debtor, its successors or its property; (3) creating, perfecting or enforcing any lien or encumbrance against the Debtor or the Reorganized Debtor, its successors or its property; (4) asserting any setoff, right of subrogation or recoupment of any kind against any obligation due to the Debtor or the Reorganized Debtor, its successors or its property; (5) commencing or continuing any action, in any manner, in any place that does not comply with or is inconsistent with the provisions of this Plan or the Confirmation Order. Any Person injured by any violation of such injunction shall

-13-

Case 08-14135    Doc 416    Filed 10/30/09    Entered 10/30/09 17:10:08    Desc Main
Document      Page 13 of 16

recover actual damages, including costs and attorney's fees, and, in appropriate circumstance, may recover punitive damages, from the willful violator.

Nothing contained herein in this Section 9.8 shall be deemed a release of Paul Wesch and/or The Mitchell Company, Inc. of their liability, if any, to creditors of the Debtor as a result of the confirmation of this Plan.

9.9     **Preservation of Rights of Action.**  Any of Debtor's rights or causes of action against any party including, but not limited to rights or causes of action under Sections 544 and 550, inclusive, of the Bankruptcy Code or under any other statute or based on any legal theory shall remain assets of, and vest in, the Reorganized Debtor.  Specifically included in said assets shall be the rights to pursue causes of action for preferences, fraudulent transfers, and those claims described above in Section 7.1.  The Reorganized Debtor may pursue those rights of action, as appropriate, in accordance with what is in the best interests, and for the benefit, of the Reorganized Debtor.

9.10    **Limitation of Liability.**  Neither the Debtor, nor its manager, employees, member or agents, nor any professional Persons employed by any of them shall have or incur any liability to any Person for any act taken or omission made in good faith in connection with or related to formulating, implementing, confirming or consummating this Plan, the Disclosure Statement or any contract, instrument, release or other agreement or document created in connection with this Plan.

9.11    **Other Documents and Actions.**  The Debtor and the Reorganized Debtor may execute such documents and take such other action as is necessary to effectuate the transactions provided for in this Article.

9.12    **Unclaimed Property.**  Any property to be distributed on account of a claim against or interest in the Debtor shall be distributed by mail to the latest mailing address filed of record for the party entitled thereto, or if no such mailing address has been so filed, the mailing address reflected in the Schedules of Assets and Liabilities filed by the Debtor.  Any property so distributed that is unclaimed for five years after the distribution thereof by mail shall be come property of the Reorganized Debtor free and clear of any restrictions thereon.

9.13    **Setoffs.**  the Reorganized Debtor may, but shall not be required to, set off against any Allowed Claim and the distributions to be made pursuant to the Plan on account of such claim, claims of any nature that the Debtor or Reorganized Debtor may have against the holder of such Allowed Claim; provided, however, that neither the failure to effect such a setoff nor the allowance of any claim against the Debtor or Reorganized Debtor shall constitute a waiver or release by the Debtor or Reorganized Debtor of any claim that the Debtor or Reorganized Debtor may possess against such holder.

# ARTICLE X
# RETENTION OF JURISDICTION

The Court shall retain jurisdiction of this case:

10.1    To determine the allowance or disallowance of and the amount, priority, validity and dischargeability of claims and interests.

10.2    To interpret the Plan and hear all disputes arising in connection with execution of this Plan.

10.3    To fix and approve allowances of compensation and other administrative expenses, including, if appropriate, payments to be made in connection with this Plan.

10.4    To decide controversies and disputes arising under or in connection with the Plan.

10.5    To correct any defect, cure any omission, or reconcile any inconsistency in the Plan, and to modify or amend the Plan.

10.6    To enforce all causes of action which may exist in behalf of the Debtor.

10.7    To issue any order, process or judgment necessary or appropriate to carry out the provisions of the Plan.

# ARTICLE XI
# OBJECTIONS TO CLAIMS

11.1    Notwithstanding any provision of the Plan specifying a date or time for payment of distribution of consideration hereunder, payments and distributions in respect of any claim that at such date or time is subject to an objection, motion for estimation, or scheduled as disputed, unliquidated, or contingent, or the collateral securing said claim is subject to a pending valuation request, shall not be made until an order with respect to such objection, estimation, or valuation becomes final, whereupon such payments and distributions shall be made promptly in accordance with the Plan.

HOLIDAY ISLE, LLC


BY:/s/ Paul Charles Wesch
    THE MITCHELL COMPANY, INC.
    By: Paul Charles Wesch
    As Its Executive Vice-President
    Its Managing Member

-15-

/s/ Irvin Grodsky
IRVIN GRODSKY
Attorney for Debtor
Post Office Box 3123
Mobile, Alabama 36652
(251) 433-3657

**CERTIFICATE OF SERVICE**

On this the 30th day of October, 2009, I hereby certify that the above and foregoing document has been served via court electronic mailing system.

/s/ Irvin Grodsky
IRVIN GRODSKY